UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION


ERIK EARHART,

                    Petitioner

        v.                                    C-1-06-62

KHELLEH KONTEH, WARDEN,

                    Respondent


## ORDER

This matter was referred pursuant to 28 U.S.C. § 636 to the United States Magistrate Judge for consideration and report on the Petition for Writ of Habeas Corpus filed by the petitioner pursuant to 28 U.S.C. § 2254.  The matter is before the Court upon the following Report and Recommendation of the Magistrate Judge (doc. no. 11) recommending that the Petition for Writ of Habeas Corpus be denied with prejudice, and upon petitioner's objections thereto (doc. no. 14).

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings this case pro se seeking a Writ of Habeas Corpus pursuant to 28 U.S.C. §2254.  The case is now before the Court upon the petition (Doc. 2), respondent's return of writ and exhibits thereto (Doc. 4), petitioner's reply to the return of writ (Doc. 9), and petitioner's motion to stay proceedings. (Doc. 10).

2

## I.    PROCEDURAL HISTORY

This case involves the following facts, as summarized by the First District

Ohio Court of Appeals:[1]

> {¶ 2} In May 2001, Earhart, a bus driver and chaperone for a group of Michigan children participating in a band competition, visited the Preston Hotel in Sharonville, Ohio. A young girl not affiliated with the band was celebrating her tenth birthday with friends at the hotel pool. Earhart approached the girls, spoke with them, and asked one of the girls to accompany him to his hotel room while he changed into his swimsuit. She declined. When Earhart returned to the pool, he joined the girls' games. He picked the children up and threw them into the air. Each of the four female victims described that while Earhart was picking them up, he forcefully rubbed their pubic regions.
>
> {¶ 3} Earhart followed the children into a nearby hot tub. There he digitally raped one of the ten-year-old victims. One of the other victims saw the rape. With the rape victim in tears, the girls left the hot tub. The victim told her mother about the attack. The mother summoned Sharonville police and Earhart was arrested. The rape victim was examined at Children's Hospital. Doctors found vaginal abrasions consistent with sexual abuse.

(Doc. 4, Exh. K at 2-3).

Petitioner was indicted by the May 2001 Term of the Hamilton County, Ohio

Grand Jury on one count for the crime of rape with specification in violation of

Ohio Rev. Code § 2907.02, and four counts for the crime of gross sexual

imposition with specifications in violation of Ohio Rev. Code § 2907.05. (Doc. 4,

Exh. A).  Petitioner entered a plea of not guilty and the case proceeded to trial.

Petitioner was found guilty of rape, with specification dismissed, and guilty of four

---

[1]    The factual findings of the state appellate court are entitled to a presumption of correctness in the absence of clear and convincing evidence to the contrary.  28 U.S.C. § 2254(e)(1); *see McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004).

counts of gross sexual imposition, with specifications dismissed. (Doc. 4, Exh. B). On August 29, 2002, petitioner was sentenced to consecutive terms of incarceration of ten years for rape and five years for each gross sexual imposition conviction, and found to be a sexual predator. *Id.*

Petitioner, through counsel, filed a timely notice of appeal to the First District Court of Appeals on September 20, 2002. (Doc. 4, Exh. C). On May 5, 2003, the Court of Appeals sua sponte dismissed the appeal for failure to prosecute. (Doc. 4, Exh. D). Petitioner, through counsel, filed a motion to reinstate the case on July 3, 2003, which was subsequently denied on August 1, 2003. (Doc. 4, Exhs. E, F).

On July 9, 2003, petitioner filed a pro se motion for delayed appeal in the Ohio Court of Appeals. (Doc. 4, Exh. G). Petitioner's motion was granted, and the same counsel was appointed to represent petitioner in his delayed appeal. (Doc. 4, Exh. H).

On appeal, petitioner raised the following assignments of error:

1) The trial court erred by requiring appellant to wear a "stun-belt" while acting as his own counsel at trial in violation of appellant's Fifth and Sixth Amendment rights guaranteed by the United States Constitution.

2) The trial court erred by denying appellant's motion to suppress the video tape made of him while in police custody in violation of his Fifth Amendment right against self-incrimination and his right to counsel in violation of the Sixth Amendment of the United States Constitution.

4

    3)  The trial court erred by allowing into evidence the deposition of Felicia Trost without a sufficient showing that she was unavailable for trial.

    4)  The evidence adduced at trial was insufficient as a matter of law to sustain the conviction rendered below in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

    5)  The judgment of the trial court is against the manifest weight of the evidence in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

    6)  The trial court erred as a matter of law by imposing the maximum possible sentence upon appellant in violation of R.C. 2929.14 where he did not commit the worst form of the offense or pose the greatest likelihood of committing future crime[s].

    7)  The trial court erred as a matter of law by imposing consecutive sentences in violation of R.C. 2929.14(E) (1) through (4) where doing so was not necessary to protect the public or punish the offender and the harm caused did not justify consecutive sentences.

(Doc. 4, Exh. I). The State filed a response. (Doc. 4, Exh. J). On September 10, 2004, the First District Court of Appeals affirmed the judgment of the trial court. (Doc. 4, Exh. K).

    Petitioner filed a pro se appeal to the Ohio Supreme Court where he raised the following propositions of law:

    1. The trial court erred by requiring appellant to wear a "stun–belt" while acting as his own counsel at trial in violation of appellant's Fifth and Sixth Amendment rights guaranteed by the United States Constitution.

    2. The trial court erred by allowing into evidence the deposition of Felicia Trost without a sufficient showing that she was unavailable for trial.

3. The evidence adduced at trial was insufficient as a matter of law to sustain the conviction rendered below in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

4. The judgment of the trial court is against the manifest weight of the evidence in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

5. The trial court erred as a matter of law by imposing the maximum possible sentence upon appellant in violation of R.C. 2929.14(C) where he did not commit the worst form of the offense or pose the greatest likelihood of committing future crime[s].

6. The trial court erred as a matter of law by imposing consecutive sentences in violation of R.C. 2929.14(E), (1) thru (4) where doing so was not necessary to protect the public or punish the offender and the harm caused did not justify consecutive sentences.

(Doc. 4, Exh. L). The State filed a response. (Doc. 4, Exh. M). On January 26, 2005, the Supreme Court of Ohio denied petitioner leave to appeal and dismissed the appeal as not involving any substantial constitutional question. (Doc. 4, Exh. N).

On June 16, 2005, petitioner filed a delayed application for reconsideration/to reopen his direct appeal on the basis of ineffective assistance of appellate counsel pursuant to Ohio Appellate Rule 26(B). Petitioner argued that his appellate counsel was ineffective for failing to argue that his sentence was contrary to the United States Supreme Court's dictates in *Blakely v. Washington,* 124 S. Ct. 2531 (2004). (Doc. 4, Exh. O). The State filed a response. (Doc. 4, Exh. P). On September 26, 2005, the Ohio Court of Appeals dismissed petitioner's Rule 26(B) application as untimely. (Doc. 4, Exh. Q).

Petitioner did not appeal the denial of his Rule 26(B) application to the Ohio Supreme Court.

On January 19, 2006, petitioner filed a petition for writ of habeas corpus in the Northern District of Ohio. His case was subsequently transferred to the Southern District of Ohio on February 3, 2006. (Doc. 1). The Petition for Writ of Habeas Corpus raises the following grounds for relief:

> Ground One: *Pro se* defendant was restrained at trial implicating Fifth, Sixth, and Fourteenth Amendment rights.
>
> Ground Two: Sentence imposed violated petitioner's Sixth Amendment right to a jury trial and was contrary to established law.
>
> Ground Three: Trial court violated petitioner's Sixth Amendment right to confrontation of a witness at trial.

(Doc. 2).

## II. STANDARD OF REVIEW

On federal habeas review, the factual findings of the state appellate court are entitled to a presumption of correctness in the absence of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1). *See McAdoo v. Elo*, 365 F.3d 487, 493–94 (6th Cir. 2004); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). In addition, the decision of the Ohio Court of Appeals is binding on this Court unless it is contrary to clearly established law or was based on an unreasonable determination of the facts of record. *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998).

7

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104– 132, 110 Stat. 1214 ("AEDPA"), a writ of habeas corpus may not issue with respect to any claim adjudicated on the merits in state court unless the adjudication either:

1.   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2.   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The phrases "contrary to" and "unreasonable application" have independent meanings:

A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the law set forth in ... [Supreme Court] cases, or if it decides a case differently that we have done on a set of materially indistinguishable facts.  The court may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from ... [the Supreme Court's] decisions but unreasonably applies it to the facts of a particular case.  The focus on the latter inquiry is whether the state court's application of clearly established federal law is objectively unreasonable ... and an unreasonable application is different from an incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694 (2002)(citation omitted).

Upon review of the entire record, this Court concludes that petitioner has failed to establish that the findings of the state appellate court are unreasonable as to justify federal habeas corpus relief.  *See Williams v. Taylor*, 529 U.S. 362 (2000).

8

### III. GROUND TWO OF THE PETITION IS PROCEDURALLY DEFAULTED AND WAIVED.

Ground Two of the petition asserts that petitioner's sentence violated his Sixth Amendment rights when the trial court imposed maximum, consecutive sentences based on findings not admitted to by petitioner or found beyond a reasonable doubt by the jury in violation of *Blakely v. Washington*, 542 U.S. 296 (2004). In *Blakely,* the Supreme Court held that an enhanced sentence imposed by a judge under a state's sentencing statute, which was based on facts neither admitted by the defendant nor found by a jury, violated the Sixth Amendment to the United States Constitution. In *Blakely*, the United States Supreme Court reversed the defendant's sentence imposed under the state's determinate sentencing scheme after finding the trial judge had enhanced the defendant's kidnaping sentence beyond the statutory maximum based upon his own finding, by a preponderance of the evidence, that the defendant had acted with "deliberate cruelty." 542 U.S. at 302–304. The Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Blakely,* 542 U.S. at 303. The *Blakely* Court clarified that "the "statutory maximum" . . . is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Id.* Petitioner contends *Blakely* was violated because the jury did not make the requisite finding that he had committed the worst form of the offense or that he

posed the greatest likelihood of recidivism, nor did he admit to either. (Doc. 9 at 15).

Respondent argues that petitioner procedurally defaulted his *Blakely* claim and therefore waived the claim for purposes of habeas corpus review. Petitioner has filed a motion to stay proceedings to permit him "time to exhaust a post-conviction claim in the state courts" (Doc. 10 at 1), presumably the *Blakely* claim that the Ohio courts did not review.

The resolution of the issue presented by petitioner's *Blakely* claim requires an understanding of the principles of exhaustion and waiver in habeas corpus cases, which although overlapping to some degree, are separate and distinct concepts leading to either dismissal of the case without prejudice (or an administrative stay of the case) when exhaustion principles are applied or the denial of unexhausted claims with prejudice when waiver principles are invoked.

The waiver and exhaustion principles are premised on the same underlying rationale. In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must first fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b)(1), (c); *see also Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275–76 (1971). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair

presentation requirement. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir.1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99–100 (6th Cir.), *cert. denied,* 474 U.S. 831 (1985).

Although premised on the same concerns, the waiver and exhaustion doctrines are distinguishable in that they are applied in distinctly different situations. If the petitioner fails to fairly present his claims through the state courts, but still has an avenue open to him in the state courts by which he may present the claims, his petition may be dismissed without prejudice, or administratively stayed, pending his exhaustion of the available state remedy. *See* 28 U.S.C. § 2254(c); *see also Duncan v. Walker,* 533 U.S. 167, 182–84 (2001) (Stevens, J., concurring); *Griffin v. Rogers,* 308 F.3d 647, 652 & n. 1 (6th Cir. 2002); *cf. Rhines v. Weber,* 544 U.S. 269, 276–77 (2005). Although the exhaustion requirement is not jurisdictional, and an application for writ of habeas corpus may be denied on the merits notwithstanding the petitioner's failure to exhaust state remedies, *see* 28 U.S.C. § 2254(b)(2), there is a strong presumption in favor of requiring exhaustion of state remedies. *See Granberry v. Greer,* 481 U.S. 129, 131 (1987). Unexhausted claims ordinarily are dismissed without prejudice to give the petitioner the opportunity to pursue them in state court. *Rose,* 455 U.S. at 518, 520–22.

11

On the other hand, if an unexhausted claim is procedurally defaulted under State law, that claim also is procedurally defaulted for the purposes of Federal habeas corpus review. *See Coleman v. Thompson,* 501 U.S. 722, 752–53 (1991); *Teague v. Lane,* 489 U.S. 288, 297–99 (1989); *Wainwright v. Sykes,* 433 U.S. 72, 87–88 (1977); *Seymour v. Walker,* 224 F.3d 542, 549–60 (6th Cir. 2000). If petitioner fails to fairly present his claims through the requisite levels of state appellate review to the state's highest court or commits some other procedural default relied on to preclude review of the merits of his claims by the state's highest court, and if no avenue of relief remains open or if it would otherwise be futile for petitioner to continue to pursue his claims in the state courts, the petition is subject to dismissal with prejudice on the ground that petitioner has waived his claims for habeas corpus relief. *See O'Sullivan,* 526 U.S. at 847–48; *Harris v. Reed,* 489 U.S. 255, 260–62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989). In determining whether a claim is procedurally defaulted, the Court must consider (1) whether there is a state procedural rule that is applicable to the petitioner's claim that the petitioner failed to comply with; (2) whether the state courts actually enforced the state procedural sanction; and (3) whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim. *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001), *cert. denied*, 535 U.S. 1031 (2002) (citing *Maupin v.*

12

*Smith*, 785 F.2d 135, 138 (6th Cir. 1986)). If, because of a procedural default, petitioner has not had his claims considered by the state's highest court and he can no longer present his claims to the state courts, he has waived the claims for purposes of federal habeas corpus review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional errors, or that failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In this case, the Court is faced with a situation involving the procedural default of petitioner's *Blakely* claim, and not a failure of exhaustion requiring a stay of this action. As petitioner has acknowledged in his reply memorandum, his case was still pending on direct appeal when the Supreme Court decided *Blakely* on June 24, 2004. Petitioner therefore could have presented his *Blakely* claim to the state appellate court by proposing an amendment in his appeal to the First District Court of Appeals, or by raising the claim in his appeal to the Ohio Supreme Court.[2] Petitioner's claim that his sentence violates *Blakely* is readily apparent from the face of the record, and therefore would be properly raised on direct

---

[2]The Ohio Supreme Court has considered *Blakely* claims raised for the first time on appeal in that court. *See, e.g., State of Ohio v. Scranton Buchanan,* 2006 WL 3059911 (Ohio App. 7 Dist. October 26, 2006), and cases cited therein ("[I]t appears as if *Blakely* was raised for the first time to the Ohio Supreme Court and yet the Court still reversed and remanded that case for resentencing. . . .")

13

appeal. However, petitioner challenged his sentence as violating state law only, and not as a matter of federal constitutional law.[3] Therefore, petitioner committed a procedural default by failing to present his *Blakely* claim to either the First District Court of Appeals or to the Supreme Court of Ohio on direct appeal. *See Leroy*, 757 F.2d at 99–100.

The Sixth Circuit Court of Appeals has consistently recognized that under Ohio law an issue that is not raised by a petitioner on direct appeal is subsequently barred from subsequent review based on the doctrine of *res judicata. See, e.g., Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir. 1998) (recognizing procedural default of a claim in habeas petition where appellant never raised the claim on direct appeal to the Ohio Court of Appeals and the Ohio Supreme Court); *Rust v. Zent,* 17 F.3d 155, 160–61 (6th Cir. 1994) (finding adequate and independent state procedural rule where new claims raised in his second motion for leave to file a delayed direct appeal were barred by the Ohio Court of Appeals as *res judicata* because the petitioner had opportunity to raise constitutional claims during delayed direct appeal but failed to do so); *Leroy v. Marshall,* 757 F.2d 94, 100 (6th Cir. 1985) (holding as adequate and independent state grounds the procedural default of claims raised for the first time in a petition for writ of habeas corpus on the basis of *res judicata* where petitioner failed to raise those claims in his direct appeal to the Ohio Court of Appeals and to the Ohio Supreme Court).

---

[3]His assignments of error and propositions of law were couched in terms of violations of Ohio Rev. Code §§ 2929.14(C) and 2929.14(E), (1) thru (4) only. (Doc. 4, Exhs. I, L).

14

Consequently, petitioner is now barred by his procedural default from pursuing relief in the state courts of Ohio. *Leroy*, 757 F.2d at 100.  Petitioner has thus waived his *Blakely* claim for purposes of federal habeas corpus review because he did not provide the highest state court in Ohio with an opportunity to correct any alleged constitutional error.  *See id.*

When a state prisoner is barred by a procedural default from raising a constitutional claim in the state courts, he may not litigate that claim in a § 2254 habeas corpus proceeding without showing cause for and actual prejudice from the default. *Engle v. Isaac*, 456 U.S. 107, 129 (1981); *Wainwright v. Sykes*, 433 U.S. 72, 87–88 (1977).  Absent such a showing, the prisoner will be held to have waived his claims. *Leroy*, 757 F.2d at 97.

To the extent petitioner argues as "cause" for his procedural default the ineffectiveness of his appellate counsel for failing to raise his *Blakely* claim in his direct appeal, petitioner has defaulted that claim as well.  The ineffective assistance of counsel may constitute cause for a procedural default, so long as such claim has been presented to the state courts, and is not itself procedurally defaulted. *Edwards v. Carpenter*, 529 U.S. 446, 452–53 (2000) (citing *Murray,* 477 U.S. at 488–89).

15

Here, however, petitioner procedurally defaulted his ineffective assistance of counsel claim. Petitioner raised his *Blakely* claim in connection with his motion for reconsideration/to reopen his appeal pursuant to Ohio Appellate Rule 26(B).[4] The Court of Appeals denied the claim because petitioner filed his motion outside of the 90-day time limit prescribed by Ohio App. R. 26(B)(1)(b) and failed to establish good cause for doing so. (Doc. 4, Exh. Q). The good cause requirement in Rule 26(B) is an adequate and independent state procedural ground sufficient to foreclose federal review. *Monzo v. Edwards,* 281 F.3d 568, 578 (6th Cir. 2002). Moreover, petitioner committed yet another procedural default by failing to appeal the First District's denial of his motion to the Supreme Court of Ohio. Thus, petitioner waived his ineffective assistance of counsel claim for purposes of federal habeas corpus review and is precluded from asserting this claim as cause for his procedural default of Ground Two of his federal habeas petition. *See Edwards*, 529 U.S. at 452.[5]

Since both cause and prejudice must be shown to excuse a procedural default, petitioner's failure to establish cause eliminates the need to consider prejudice. *Murray v. Carrier*, 477 U.S. 478, 494-95 (1986).

---

[4] Ohio Rule of Appellate Procedure 26(B) allows a criminal defendant to "reopen an appeal" on the basis of ineffective assistance of appellate counsel. *See* Ohio App. R. 26(B).

[5] Nor does petitioner's pro se status or lack of legal knowledge establish cause to excuse his procedural default. *See Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir.) (per curiam), *cert. denied*, 543 U.S. 989 (2004).

16

Nor has petitioner demonstrated that a fundamental miscarriage of justice will occur if his procedurally–defaulted claim for relief is not addressed on the merits by this Court. To meet this standard, found only in "extraordinary" cases, petitioner must demonstrate that "more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt." *House v. Bell*, 126 S.Ct. 2064, 2077 (2006). Petitioner has failed to make such a showing. Petitioner does not challenge his conviction, but rather the sentence imposed as a result of his conviction. Nor does he contend he is actually innocent of the crimes for which he is incarcerated. Therefore, petitioner has waived any constitutional claims associated with Ground Two of the petition for purposes of federal habeas corpus review, and Ground Two of the petition should be dismissed.

Because the undersigned recommends that Ground Two of the petition be dismissed as procedurally defaulted and waived, petitioner's motion to stay proceedings to allow him to exhaust his *Blakely* claim (Doc. 10 at 1) should be denied. In addition, the Court need not reach respondent's alternative argument that petitioner's *Blakely* claim is nonetheless without merit.

17

## IV. GROUND ONE OF THE PETITION SHOULD BE DENIED.

In Ground One of his petition, petitioner alleges that the use of a stun belt to restrain him during his trial violated his rights under the Fifth, Sixth, and Fourteenth Amendments. Petitioner represented himself at trial and was restrained via a stun belt secured around his waist and underneath his clothing. He contends the trial judge committed constitutional error by not using the restraint as a last resort. He also contends the trial judge improperly deferred to the judgment of the county sheriff and the sheriff's policy on using such restraints on pro se felony defendants who are in the custody of the sheriff's department and who choose to represent themselves at trial. Petitioner argues that he was physically restrained at trial primarily because he was being held in lieu of bond and exercised his constitutional right to self–representation. He asserts that the sheriff's policy relied upon by the trial judge to restrain petitioner offends the Equal Protection Clause by arbitrarily discriminating against those defendants unable to post bail. Petitioner argues that as a result of this restraining device, he was unable to participate fully in his defense because of the continuous fear of pain and humiliation he would experience if the device was activated.

18

Subjecting a criminal defendant to physical restraints during his criminal trial implicates his right to a fair and impartial trial.  In *Deck v. Missouri,* 544 U.S. 622 (2005), the Supreme Court held that "the Constitution forbids the use of visible shackles during the penalty phase, as it forbids their use during the guilt phase, *unless* that use is justified by an essential state interest–as the interest in courtroom security–specific to the defendant." *Id.* at 624 (emphasis in the original). Although the Supreme Court's decision in *Deck* post–dates petitioner's trial and the alleged violation in this case, and state courts are only held to laws clearly established by the Supreme Court at the time of the alleged violation, the *Deck* Court found that the rule prohibiting the visible shackling of a criminal defendant during the guilt phase absent extraordinary circumstances is premised on long–established Supreme Court precedent. *Id.* at 627–629.  *See Holbrook v. Flynn,* 475 U.S. 560, 568–69 (1986) (holding that requiring a criminal defendant to wear a prison uniform in front of the jury is "the sort of inherently prejudicial practice that, like shackling, should be permitted only where justified by an essential state interest specific to each trial"); *McKaskle v. Wiggins,* 465 U.S. 168, 188 (1984) (a state defendant "may not normally be forced to appear in court in shackles"); *Estelle v. Williams,* 425 U.S. 501, 505 (1976) (holding that defendants may not be presented to the jury in prison issue clothing so that "an unacceptable risk is presented of impermissible factors coming into play" where to do so "furthers no essential state policy"); *Illinois v. Allen,* 397 U.S. 337, 344 (1970) (holding that "no

defendant should be tried while shackled and gagged except as a last resort").

*See also Lakin v. Stine,* 431 F.3d 959, 963 (6th Cir. 2005) ("[T]he principle that shackling a defendant at trial without the individualized determination as to necessity violates the due process clause was clearly established long before *Deck* was decided."); *Kennedy v. Cardwell*, 487 F.2d 101 (6th Cir. 1973), *cert. denied*, 416 U.S. 959 (1974) (recognizing inherent prejudice to a defendant required to be manacled or shackled while in the courtroom during his trial). As the Supreme Court noted in *Illinois v. Allen*, 397 U.S. 337, 344 (1970), the sight of physical restraints may have a significant effect on the jury. "There can be little question that the holdings of the Supreme Court reflect a strong concern that trial practices such as shackling can have substantial or injurious influences on jury verdicts. The holdings in *Estelle* and *Holbrook*, especially, effectively state that indicia of guilt, such as shackles, impose a significant level of harm upon the presumption of innocence, and that the injurious influence of such harm can only be overcome by a confident finding that the indicia were warranted or that the outcome of the defendant's case was not affected." *Ruimveld v. Birkett*, 404 F.3d 1006, 1014 (6th Cir. 2005), citing *Estelle v. Williams*, 425 U.S. 501, 512–13 (1976); *Holbrook v. Flynn*, 475 U.S. 560, 568–69 (1986). "Thus, the Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial. Such a determination may of course take into

account the factors that courts have traditionally relied on in gauging potential security problems and the risk of escape at trial." *Deck*, 544 U.S. at 629.

Petitioner in the instant case was restrained by a stun belt, as opposed to shackles, and the United States Supreme Court has not specifically addressed the use of such devices in the context of a criminal trial. However, several circuits, including the Sixth Circuit in an unreported decision, have considered the use of stun belts on criminal defendants. These courts have recognized that many of the same concerns posed by shackles are present with the use of stun belts. *See United States v. Waagner,* 104 Fed. Appx. 521, 2004 WL 1595193 (6th Cir. 2004) (unpublished). *See also United States v. Durham*, 287 F.3d 1297, 1306 (11th Cir. 2002) ("[S]tun belts plainly pose many of the same constitutional concerns as do other physical restraints, though in somewhat different ways."). In fact, if seen by the jury, the stun belt "may be even more prejudicial than handcuffs or leg irons because it implies that unique force is necessary to control the defendant." *Durham*, 287 F.3d at 1305, quoting *State v. Flieger*, 91 Wash. App. 236, 955 P.2d 872, 874 (1998). For this reason, the "decision to use a stun belt must be subjected to at least the same close judicial scrutiny required for the imposition of other physical restraints." *Waagner,* 104 Fed. Appx. 521, 2004 WL 1595193 **4, quoting *Gonzalez v. Pliler*, 341 F.3d 897, 901 (9th Cir. 2003). This Court determines that the most analogous Supreme Court law on the issue of restraints prohibits the routine use of restraints and requires an individualized determination of necessity for such restraints during the guilt phase of the criminal proceeding.

21

The last state court to issue a reasoned opinion regarding petitioner's claim,

the First District Ohio Court of Appeals, found the following:

> {¶ 4} In his first assignment of error, Earhart argues that the trial court
> erred by requiring him to wear a stun belt while acting as his own trial
> counsel. The decision to impose restraints, including a stun belt, is
> committed to the sound discretion of the trial court. See *State v.
> Leonard,* 157 Ohio App.3d 653, 2004–Ohio–3323, 813 N.E.2d 50, at
> ¶ 48; see, also, *State v. Frazier,* 1st Dist. Nos. C–030571 and C–
> 030572, 2004–Ohio–4108.

> {¶ 5} Here, the trial court conducted a pretrial hearing. Cf. *State v.
> Leonard* at ¶ 49. It heard evidence about the operation of the stun
> belt and about the need for the stun belt to maintain the safe,
> reasonable, and orderly progress of the trial, particularly where the
> defendant was acting as his own counsel and, of necessity, needed to
> move between counsel's table, exhibits, and the witness stand. See
> *State v. Frazier* at ¶ 4 and ¶ 6. Earhart also received information about
> the operation of the belt. The trial court identified areas of the
> courtroom in which Earhart could move freely without fear of being
> stunned, and it imposed the same movement restrictions on the
> assistant prosecutor. Earhart wore the stun belt beneath his civilian
> clothes, and there is no evidence that the jury was aware of the stun
> belt. Moreover, he played an active role in his defense at trial. The
> trial court's decision was reasonable under the circumstances and was
> not an abuse of its discretion. The assignment of error is overruled.

(Doc. 4, Exh. K at 3).

The decision in *State v. Leonard*, 157 Ohio App.3d 653, relied upon by the

Ohio Court of Appeals in petitioner's case, applied the principles set forth in the

Supreme Court's decisions in *Allen* and *Holbrook* in assessing the defendant's

claim that the use of a stun belt during his trial violated his constitutional right to

a fair trial.  The First District Court of Appeals in *Leonard* recognized that the use

of restraints on a criminal defendant is an "inherently prejudicial practice," and

may be employed only as a "last resort" when justified "by an essential state interest specific to each trial." *Leonard*, 157 Ohio App.3d at 669, 813 N.E.2d 50, 62–63 (citations omitted).  Thus, the Ohio Court of Appeals in petitioner's case, by its citation to *Leonard,* correctly identified the relevant clearly established United States Supreme Court precedent applicable to petitioner's claim.  Thus, this Court must determine whether the Ohio Court of Appeals unreasonably applied that law to the facts of petitioner's case. *Bell*, 535 U.S. at 694.

This Court finds that the First District Court of Appeals' application of that law was objectively unreasonable, in that it failed to require the trial court to make an individualized determination of necessity as to the imposition of restraints on petitioner.  Nevertheless, the Court determines that such error was harmless and does not justify granting the writ in this matter.

In this case, the trial court held an evidentiary hearing the morning of trial on the prosecutor's request to have the defendant restrained by a stun belt and to limit his movement within the courtroom. (Doc. 4, Exh. S3 at 7–8).  Petitioner objected to the use of the restraint on the basis that it would inhibit the presentation of his defense because of the fear of activation of the device. (Doc. 4, Exh. S3 at 11).  Lt. John Adkins of the Hamilton County Sheriff's Department, whose responsibilities include courtroom security during trials, testified that it is the standard procedure within the sheriff's department to secure felony defendants with a REACT belt (stun belt) if they choose to represent themselves at trial, regardless of the particular crime with which they are charges. (Id. at 53, 59–

60).  He testified that the policies are "based on the seriousness of the crime, the location of the transport, the type of person you are transporting.  In this particular case, someone who is pro se that needs to have movement all over the courtroom, it's for the benefit of those people to afford them that liberty to walk around.  Because when someone is in our custodial control, we dictate what they can or can't do." (Id. at 59).  Lt. Adkins testified that the device is hidden beneath the defendant's clothing and of the approximately 300 to 500 times the device has been used, it has never been accidentally or purposefully activated by the deputy in control of the activation device. (Id. at 53–54, 58).  He further testified that the device gives a forewarning of activation via an audible alert that does not automatically result in a discharge of electricity. (Id. at 54).  He testified that the device can only be activated by the  depression of a button by a trained deputy.  Lt. Adkins also described the training the deputies receive to become certified to use the stun belt activation device. (Id. at 57).

At the request of petitioner, the trial judge directed the sheriff to provide petitioner with literature on the device so he had a better understanding of its use and activation. (Id. at 63).  The trial court also set the same restrictions on the prosecutor as those set for petitioner on movement around the courtroom. (Id. at 64–69).  The trial judge also ruled:

24

> As to the belt issue, it is traditionally the position of this Court to abide by the recommendation of the Hamilton County Sheriff regarding security issues, and to rely on the training that the sheriff has provided to his staff. And I'm going to allow, or order, that the sheriff, and in accordance with their recommendations, to require the defendant to wear the belt during the proceedings, and to comply with the restrictions that were described by the witness.

(Id. at 68).

The trial judge essentially deferred to the recommendation of the Sheriff's department pursuant to their policy of restraining all pro se defendants in custody who represent themselves at trial. There was no case specific individualized determination as to this defendant and whether this particular defendant posed any particular security needs or escape risk necessitating use of restraints. The nature of the charges against petitioner cannot provide the entire justification for the use of such restraints. *Lakin*, 431 F.3d at 965. The evidence presented by Lt. Adkins certainly supplied the justification for the overall policy of restraining all felony defendants in the custody of the Hamilton County Sheriff's Department, but did not address whether petitioner himself posed a particular security risk. As Lt. Adkins testified, the stun belt is imposed on all pro se defendants who wish to represent themselves at trial, regardless of the crime with which they are charged. Although there may have been compelling reasons to restrain petitioner at his trial with a stun belt, the evidentiary record in this case fails to justify the imposition of such restraints in accordance with the Supreme Court's decisions cited above.

25

Nevertheless, the Court determines such error is harmless. Petitioner is not entitled to habeas corpus relief unless such error had a "substantial and injurious effect or influence in determining the jury's verdict." *See, e.g., Calderon v. Coleman,* 525 U.S. 141, 145 (1998) (quoting *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993), in turn quoting *Kotteakos v. United States,* 328 U.S. 750, 776 (1946)); *see also O'Neal v. McAninch,* 513 U.S. 432, 435–36 (1995). Under this "harmless error" standard, if upon review of the entire record, the court is convinced that "the error did not influence the jury, or had but slight effect," the conviction must stand. *O'Neal,* 513 U.S. at 436–38; *Kotteakos,* 328 U.S. at 764.

Here, the trial court's decision to impose the stun belt restraint on petitioner without first making an individualized determination of the security risks posed by petitioner did not deprive petitioner of a fair trial, and in any event, did not have a substantial and injurious effect or influence in determining the jury's verdict. The stun belt was worn underneath petitioner's civilian clothing and there is absolutely no evidence in this case that the belt was visible to the jury. *Cf. Deck v. Missouri,* 544 U.S. at 635 (only visible shackling is inherently prejudicial). Petitioner was representing himself and, of necessity, needed some freedom of movement around the courtroom to conduct his defense. Clearly visible restraints, such as handcuffs and shackles, would present a risk of compromising the physical semblance of innocence. The use of a non-visible means of restraint preserved petitioner's semblance of innocence and there is no evidence that his stun belt was

26

either accidentally or purposefully discharged.  Nor is there evidence that petitioner's defense was inhibited in any way.  Finally, the jury was presented with significant and strong evidence of petitioner's guilt.  The jury was presented with eyewitness testimony from the victims and others present in the pool that when petitioner would throw the female children in the pool he would place one of his hands between their legs and rub their pubic regions.  There was also eyewitness testimony that while in the hot tub, petitioner digitally raped one of the 10-year old girls.  There was testimony from one of the other victims who was wearing goggles that she observed the rape in the hot tub.  The State also presented medical evidence showing the  abrasions to the one child's vagina was consistent with sexual abuse.  In the light of this evidence, it is unlikely that the stun belt and any alleged effects on petitioner's comportment and demeanor had a substantial influence on the jury's determination of his guilt.  Petitioner, therefore, has not demonstrated he is entitled to habeas relief based on the claim alleged in Ground One of the petition.

## V.  GROUND THREE OF THE PETITION SHOULD BE DENIED.

In Ground Three of the petition, petitioner asserts that the trial court violated his Sixth Amendment right to confrontation of a witness at trial when the court permitted, over objection, the videotaped deposition of Felicia Trost, a victim in this case.  Petitioner contends the prosecutor "failed to show that the witness was unavailable, in the constitutional sense, for trial.  Witness was not deposed before a judge or jury present.  Videotape lacked reliability." (Doc. 1 at 9).

The last state court to issue a reasoned opinion on the issue, the Ohio Court of Appeals, rejected petitioner's claim of error in this regard:

> {¶ 11} In his third assignment of error, Earhart claims that the trial court erred in allowing the videotaped deposition of one of the child victims to be played before the jury. Pursuant to Crim.R. 15(F), deposition testimony may be used during a trial in lieu of live testimony if "the witness is out of the state, unless it appears that the absence of the witness was procured by the party offering the deposition * * *." The use of a videotaped deposition during a trial does not violate a defendant's right to confrontation so long as the defendant and his attorney were present during the deposition and the defendant was able to cross-examine the witness. See *State v. Phillips* (1995), 74 Ohio St.3d 72, 95, 656 N.E.2d 643.
> {¶ 12} Here, the state moved to admit the eleven-year-old victim's videotaped deposition because, as both parties knew, she was to be out of state on a previously scheduled family vacation at the time of trial. Earhart was present during the entire deposition, the victim testified under oath, and she was cross-examined by Earhart, acting as his own counsel. Earhart's court-appointed counsel-advisor was also present. The assignment of error is overruled.

(Doc. 4, Exh. K at 5-6).

28

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig,* 497 U.S. 836, 845 (1990). The constitutional right to confront one's accuser encompasses: (1) a face-to-face meeting of the defendant and the witnesses against him at trial; (2) the testimony of witnesses under oath or affirmation, thereby impressing upon them the seriousness of the matter; (3) the cross-examination of witnesses; and (4) the opportunity for the trier of fact to observe the witnesses' demeanor. *Craig*, 497 U.S. at 846; *Ohio v. Roberts,* 448 U.S. 56, 63 (1980), *overruled on other grounds, Crawford v. Washington,* 541 U.S. 36 (2004).

The Confrontation Clause prohibits the admission of out-of-court statements that are testimonial in nature unless: 1) the declarant is unavailable, and 2) the defendant had a prior opportunity to cross-examine the declarant, regardless of whether such statements are deemed reliable. *Crawford v. Washington,* 541 U.S. 36 (2004). The Confrontation Clause's "preference for face-to-face confrontation *at trial . . .* requires that deposition testimony be admitted only when the witness is unavailable." *Brumley v. Wingard,* 269 F.3d 629, 642 (6th Cir. 2001) (emphasis in the original) (quoting *Roberts*, 448 U.S. at 63). Thus, "the

29

prosecution may not substitute former testimony for live testimony unless the government first demonstrates that the witness remains unavailable for trial proceedings." *Hamilton v. Morgan*, 474 F.3d 854, 858 (6th Cir. 2007) (citing *Roberts,* 448 U.S. at 65). There are two requirements for the unavailability exception to apply:

> First, the exception mandates that the witness's testimony was given at previous judicial proceedings against the same defendant which was subject to cross-examination by that defendant. *Crawford,* 541 U.S. at 54 ("[T]he common law in 1791 conditioned admissibility of an absent witness's examination on . . . a prior opportunity to cross-examine. The Sixth Amendment therefore incorporates [that] limitation[ ]."). Second, a witness cannot be deemed unavailable for purposes of the exception unless the government has made a good faith effort to obtain her presence at the trial proceedings. *Roberts,* 448 U.S. at 74.

*Hamilton*, 474 F.3d at 858. The determination of the prosecutor's good faith effort is context-specific:

> The law does not require the doing of a futile act. Thus, if no possibility of procuring the witness exists (as, for example, the witness' intervening death), "good faith" demands nothing of the prosecution. But if there is a possibility, albeit remote, that affirmative measures might produce the declarant, the obligation of good faith *may* demand their effectuation. "The lengths to which the prosecution must go to produce a witness . . . is a question of reasonableness." . . . The ultimate question is whether the witness is unavailable despite good-faith efforts undertaken prior to trial to locate and present that witness. As with other evidentiary proponents, the prosecution bears the burden of establishing this predicate.

*Roberts,* 448 U.S. at 74-75. *See also California v. Green*, 399 U.S. 149, 189 n.2 (1970).

30

In this instant case, the Ohio Court of Appeals never addressed the issue of whether the prosecution made a good faith effort to procure the presence of Felicia Trost at trial in accordance with the Supreme Court's decisions in *Crawford* and *Roberts*. A review of the transcript reveals that the trial was initially rescheduled due to the unavailability of Dr. Duma, a witness for the prosecution. (Doc. 4, Exh. S at Tr. 523). After a new trial date was selected, the prosecutor learned that Ms. Trost had a previously scheduled and planned vacation out of town for the week of trial and determined it was not "fair to deny that child the opportunity to go on that vacation." (Doc. 4, Exh. S at Tr. 519). The prosecutor consulted with Mr. Ranz, petitioner's then-appointed attorney, and advised him that Ms. Trost was not available due to a prior planned vacation. (Doc. 4, Exh. S at Tr. 523). The parties arranged for a videotaped deposition of Ms. Trost at which petitioner was present with his attorney advisor and at which petitioner personally conducted the cross-examination of Ms. Trost. (Doc. 4, Exh. S at Tr. 520-522).

It is clear that "the *knowing preparation* of a videotaped deposition as a substitute for the trial testimony *of a constitutionally available witness* is inconsistent with the values of the Confrontation Clause, despite reduced concerns with reliability." *Brumley*, 269 F.3d at 642 (emphasis in the original). Neither the Supreme Court nor the Sixth Circuit has explicitly addressed whether a witness is "unavailable" because she is on a previously scheduled vacation out of town. However, several state courts have determined that under such circumstances the

31

witness is not constitutionally unavailable for purposes of the constitutional right to confront one's accuser. *See People v. Babcock,* 2006 WL 2739328, *3 (Mich. App. 2006); *Garner v. Indiana,* 777 N.E.2d 721, 725 (Ind. 2002); *Barnes v. Alabama,* 704 So.2d 487, 496 (Ala. Crim. App. 1997); *Washington v. Sanchez,* 42 Wash. App. 225, 230–31, 711 P.2d 1029, 1033 (1985). Had the prosecutor subpoenaed Ms. Trost, she would have been obligated to appear at trial in person. "A vacation does not constitute constitutional unavailability where the declarant may be located and procured." *Babcock*, 2006 WL 2739328, *3. *See also Lam v. State of Iowa*, 860 F.2d 873, 875 (8th Cir. 1988). While the Court is not unsympathetic to the prosecutor's desire to accommodate Ms. Trost's family out of respect for their vacation plans, this does not satisfy the requirement of unavailability. Petitioner's confrontation rights should not be forced to yield to the convenience of a witness. Under the circumstances of this case, the Court finds the prosecutor failed to make a good faith and reasonable effort to procure Ms. Trost's attendance at trial in violation of petitioner's rights under the Confrontation Clause. Thus, the Court concludes that the trial judge erred by admitting the deposition testimony of Ms. Trost, and in turn, that the Ohio Court of Appeals' decision upholding that decision was contrary to and an unreasonable application of clearly established federal law. Nevertheless, for the reasons discussed below, the Court finds such error to be harmless.

32

Generally, an error that does not result in the petitioner's custody is not a basis for relief under 28 U.S.C. § 2254.  In other words, habeas relief should not be granted even if there was constitutional error unless the error resulted in harm to the petitioner.  "[C]onstitutional error is cause for federal habeas relief only if it has 'a substantial and injurious effect or influence in determining the jury's verdict.'" *Hill v. Hofbauer,* 337 F.3d 706, 718 (6th Cir. 2003) (quoting *Brecht v.* 507 U.S. at 623):

> In determining whether Confrontation Clause error is harmless . . ., the reviewing court should consider: "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, . . . and, of course, the overall strength of the prosecution's case."

*Fulcher v. Motley,* 444 F.3d 791, 809 (6th Cir. 2006) (quoting *Hill,* 337 F.3d at 718, in turn quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)) (second alteration in original).  In this regard, the Court may consider corroborating evidence to determine whether the error was harmless. *Fulcher,* 444 F.3d at 809 (citing *Idaho v. Wright,* 497 U.S. 805, 823 (1990)).

In the instant case, the deposition testimony of Ms. Trost was cumulative and corroborated by the testimony of two independent eyewitnesses on the sexual imposition charge.  Both witnesses observed petitioner place one of his hands between the legs of the female children, including Ms. Trost, before throwing them in the pool. (Doc. 4, Exh. S at Tr. 408, 409–411, Testimony of Jordan Meyer; Doc. 4, Exh. S at Tr. 467–468, testimony of Megan Meadows).  Megan Meadows testified

and demonstrated with a manikin that she observed petitioner "holding" or "grabbing" Ms. Trost "in a bad area" when he was throwing her up in the air. (Doc. 4, Exh. S at Tr. 467-468).   However, when he threw the single male child, he would hold him around the waist. (Doc. 4, Exh. S at Tr. 409).  In addition, each of the other child witness-victims testified consistently that petitioner held each of the female children between the legs and rubbed their pubic regions before throwing them.  Viewing the totality of the evidence, the Court cannot conclude that the admission of Ms. Trost's videotape deposition testimony had "a substantial and injurious effect or influence in determining the jury's verdict." *Brecht,* 507 U.S. at 623.  The Court finds the admission of the deposition testimony was not sufficiently egregious to trigger fair trial concerns, and in any event, had at most only a minimal effect or influence on the jury's verdict in this case.  Petitioner, therefore, has not demonstrated he is entitled to habeas relief based on the claims alleged in Ground Three of the petition.

CONCLUSION

Upon careful consideration of the petitioner's objections, and upon conducting a *de novo* review of the record, especially in light of petitioner's objections, the Court finds that petitioner's contentions have either been adequately addressed and properly disposed of by the Judge or present no particularized arguments that warrant specific responses by this Court.  The Court finds that the Judge has accurately set forth the controlling principles of law and

34

properly applied them to the particular facts of this case and agrees with the Judge.

Accordingly, the Court accepts the factual findings and legal reasoning of the Magistrate Judge and hereby **ADOPTS** his Report and Recommendation dated March 14, 2007. Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 2) is **DENIED WITH PREJUDICE**. Petitioner's Motion to Stay Proceedings (Doc. 10) is **DENIED**.

A certificate of appealability shall not issue with respect to the claim alleged in Ground Two of the petition, which this Court has concluded is waived and thus procedurally barred from review, because "jurists of reason" would not find it debatable whether this Court is correct in its procedural ruling. *See Slack v. McDaniel,* 529 U.S. 473, 484–85 (2000).[6] A certificate of appealability also shall not issue with respect to petitioner's remaining claims alleged in Grounds One and Three of the petition, which have been addressed on the merits herein, because petitioner has failed to make a substantial showing of the denial of a constitutional right in any of these grounds for relief. *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

---

[6]Because this Court finds that the first prong of the two-part *Slack* standard has not been met in this case, it need not address the second prong of *Slack* as to whether or not "jurists of reason" would find it debatable whether petitioner has stated a viable constitutional claim for relief in Ground Two. *See Slack*, 529 U.S. at 484.

- 35 -

The Court **CERTIFIES** pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith" and, therefore, **DENIES** petitioner leave to proceed on appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

**IT IS SO ORDERED.**

s/Herman J. Weber
Herman J. Weber, Senior Judge
United States District Court
